The case was originally tried before his Honor Judge Wilson at Fall Term, 1874, of DAVIDSON Superior Court. The record sent up to this court from the Superior Court of Davidson County, shows that judgment was rendered at the term in favor of the plaintiff, and that the defendants thereupon moved for a new trial. The motion was overruled and the plaintiff appealed. No statement of the case upon appeal accompanies the record.
At June Term, 1875, of this court the defendants served notice upon the plaintiff that they would move the court for a venire de novo and new trial, without a case settled, and if the motion should be refused, they would then move in the alternative for an order to the Hon. Thomas J.Wilson, Judge to settle said case.
In support of the motion the defendants filed the following affidavits:
"R.E. Reeves one of the above named defendants maketh oath: (107)
I. That at Fall Term, 1874, of the Superior Court of Davidson County, the above entitled cause was tried and submitted to a jury and a verdict therein found for the plaintiff; that thereupon this defendant moved for a new trial, the motion was entered and adjourned, to be heard during the term of Forsythe Superior Court, *Page 92 
when the same was heard and argued, when his Honor Judge Wilson, the presiding Judge reserved his opinion, but decided some weeks thereafter against the motion of the defendant from which decision of Judge Wilson, the above named defendants appealed to the Supreme Court; gave notice of appeal to plaintiff's counsel and filed a proper appeal bond.
II. That as soon thereafter as defendants counsel, who resided in remote parts of the 7th and 8th districts from each other, could conveniently get together, to-wit: on the 15th day of January, 1875, the case for appeal on behalf of the defendants was made out at Wilson, N.C. and served on Col. Joseph Masten, of counsel for the plaintiff, who upon consideration of the same declined to accept it, but indicated his purpose to make out and present his amendments thereto within a short time, but owing to the sickness of said Masten's family, as he learns, did not do so until two weeks thereafter, when by consent of counsel both the original case of these defendants so served on Col. Masten and the amendments made out by him were presented to Judge Wilson, who was the then acting Judge for the settlement of the case, but for some reason the same was not finally settled by the Judge, who shortly thereafter by a decision of the Supreme Court, was declared not to be the rightful Judge of the district.
III. That since the re-instatement of the rightful Judge, this affiant and his co-defendant through their counsel have urged the counsel for the plaintiff (as they fail to agree thereupon) to allow the (108) then acting Judge Wilson to complete his statement of the case, which said counsel of the plaintiff have declined to do.
IV. "That he is advised that in this way he and his co-defendants, without any default on their behalf, have been deprived of their appeal to the Supreme Court, and they respectfully present this their case to the consideration of the Honorable Supreme Court to the end that the case of appeal may be heard and a new trial granted, or such other relief be afforded them as to the court shall be meet and proper."
C.B. Watson being duly sworn, says that he "was one of the counsel of the defendants on the trial of the above named cause. That the same was tried at Fall Term, 1874, of the Superior Court of Davidson County. That a verdict was rendered for the plaintiff late in the night of Saturday of the second week of court. That as soon as the verdict was entered the defendant moved the court for a new trial, which motion by consent was adjourned over to be argued the next week at Forsythe Court, but his Honor, Judge Wilson, held the matter up for consideration and made no decision until about the close of the Superior Court of the County of Stokes, which was the next court succeeding that of Forsythe. Upon the announcement of the decision *Page 93 
of his Honor, overruling the motion of defendants, it was agreed by counsel for the plaintiff and defendants that the case for the Supreme Court should be settled at some convenient time at Winston, where his Honor resided. In accordance with this arrangement, about the 15th of January, 1875, Stokes court having closed about the 1st of December preceding, J.F. Graves, Esq., and affiant made out a statement of the case on appeal and served the same on J. Masten, Esq., of counsel for the plaintiff, and he disagreeing thereto, it was then agreed that he should make out a substitute and submit the same to affiant, Mr. Graves not expecting to be present, and then in case of disagreement the two cases were to be handed to Judge Wilson to settle. That owing to sickness in the family of Mr. Masten, as affiant was informed by him, he failed to make out the case (109) until some two or three weeks had elapsed; and as soon as the case was made out and presented to affiant, affiant not willing to agree thereto as made out, handed the same, together with defendant's case, to his Honor Judge Wilson, informing him of the disagreement there was, during the first days of February, 1875. His Honor, for some cause to affiant unknown, failed to take any action in the premises, and in a short time thereafter went out of office."
J.F. Graves makes oath: "That he was of counsel for the defendants, and was present at the trial before Judge Wilson, at the Fall Term, 1874, of the Superior Court of Davidson County; that the trial ended late at night of the last day of said term, and upon the rendering of the verdict the defendants moved for a new trial and assigned several grounds, and the motion was continued to be heard at Chambers at Winston, on some day during the second week of Forsythe Superior Court; that the motion was taken up and discussed at Chambers at Winston, and some affidavits on the part of the defendants were read. The motion was then continued over to Stokes court, at Danbury, and there the plaintiff offered counter affidavits, and the Judge had the matter under consideration. My recollection is that I inferred from some intimation from the Judge that he would not grant the new trial, but his official decision was not then announced, but was to be made on his return to Winston. It was understood by counsel for defendants that in case the motion for a new trial was overruled, the defendants desired an appeal from the ruling of the Judge to the Supreme Court. My recollection is that when the Judge announced his determination (which was to be done on his return from Danbury to Winston) that if unfavorable to the defendants, Mr. Watson was to prepare the case for defendants, and submit it to Gen. Scales or Gilmer or myself. I had no notice of the final decision of the matter, other than the inference above stated, until about the 1st of *Page 94 
(110) January, 1875. About the 1st of January, 1875, I received from Judge Wilson a notice to appear at his offices to settle some cases (and I think this case was one of the cases named to be settled on the 10th of January.) I went over to Winston, and Mr. Watson and I then made up the case for defendants and presented it to Col. Joe Masten, counsel for plaintiff, and he said he would examine and see if he could agree to it. The next morning I called on Col. Masten about the matter, and he said he would not agree to our case. I asked him to make his exceptions. He said he would have to write out his case, for our views were so different he could not file his exceptions in any other way. I understood that he had been busy in the preparing of his case. No exceptions were taken on account of delay, but Col. Masten was to prepare his case, and if we could not agree we were to submit it to Judge Wilson, who was then in Winston. I then left the matter in Mr. Watson's hands and returned to Mount Airy, and remained a few days, and then went again to Winston, I called on Col. Masten again, and he said he had not prepared his case, in consequence of the sickness of one of his children. Judge Wilson had then gone to Raleigh, where I met him a few days thereafter."
The plaintiff filed the following counter affidavit: The plaintiff E. M. Adams, in answer to the rule to show cause, etc., says:
That the statements in item I of defendant's affidavit in this case filed are true except in the statements, viz: "but decided some weeks thereafter," the facts are that the motion was argued before his Honor about the 28th of November, and the decision was rendered about the 9th of December, and also in this, viz: "Had filed a proper appeal bond." The facts are, that no notice or copy of any appeal bond or undertaking has been served on the plaintiff or any of his attorneys as they inform him.
II. That the statements of the defendant, R.E. Reeves, made (111) in item II of his affidavit are not a full and true statement of the facts in the case. That the facts are: 1. That defendant's counsel then resided, Mr. William H. Baily, in Salisbury. Gen. A.M. Scales and Col. J.A. Gilmer, in Greensboro, and Mr. C.B. Watson in Winston, all within a few hours ride of Winston by railroad. J.F. Graves resides in Mt. Airy, within ten hours ride by horseback of Winston, and the defendants both resided within eight hours ride by horseback of Winston, so that the defendants and all of their counsel could have assembled at Winston, where the Judge resided at any time upon a ten hours notice, so that the defendants have shown no good reason why they did not assemble all of their counsel in Winston, if they desired the presence of all, and make out and serve their case upon plaintiff's counsel, one of whom resided in Winston, on or before *Page 95 
the expiration of ten days from the date of the notice of appeal. Plaintiff avers that defendants could easily have done so if they had desired it.
III. That defendants well knew that three days and a part of three nights were occupied in the trial of the case, that over one hundred witnesses were examined, and that the defence was very bitter and that much feeling was manifested by both sides during the whole trial, and upon the motion for a new trial.
IV. That defendants were notified that plaintiff had instructed his counsel not to yield anything whatever.
V. That defendants and their counsel knew the uncertain tenure by which Judge Wilson held his office and that there was a suit then pending, Cloudv. Wilson, to decide the question of who was the rightful Judge; and that the case had gone up to the Supreme Court from the 7th district, and that the 7th district would be called on the 21st of January, 1875, at which time the case of Cloud v. Wilson would stand for hearing, and that the 8th district would be called on January 28th, 1875.
VI. That Judge Wilson, in the latter part of December, 1874, on the first days of January 1875, notified both the counsel for (112) the plaintiff and the defendants in this case, to attend at his office in Winston, on a specified day in January, 1875, which day was either the 13th or 14th, as he would on that day, make up and settle the appeal of the defendants in this case, so that the same might go up to the Supreme Court. That this article was in writing.
That plaintiff is informed, that upon the reception of this notice from Judge WILSON, which was within a day or two after its date, by Col. Masten, one of plaintiff's counsel, he at once called upon his Honor to know why it was that the plaintiff's counsel, were notified to attend on the day specified to settle the case on appeal in this case, when nothing of the kind had been served on him nor on the plaintiff or any of his counsel, as he was informed by defendants or their counsel. His Honor stated that he had had no notice that defendants had served any case of appeal on plaintiff or his counsel, but that his purpose was to notify them to make out and serve their case on appeal and have plaintiff to file his exceptions, if he disagreed to defendants' case, if this had not already been done, so that the appeal might be settled on the day specified and the case made out and sent up before the case of Cloud v. Wilson, was heard in the Supreme Court.
VII. That plaintiff with two of his counsel attended at Judge Wilson's on the day specified. Messrs. Graves and Watson, two of defendants' counsel, were also present. The Judge stated that no case *Page 96 
on appeal had been filed with him and he had no notice of such. So nothing was done in the matter. That the Judge settled all the cases of appeals on the circuit, when the parties disagreed, on that day. That after the Judge had adjourned his court, Mr. Graves left for Greensboro, and after his return to Winston from that place, he with Mr. Watson did make out and serve a case on appeal for defendants on Col. Masten, who upon examining it, stated that he (113) could not agree to it and that they certainly did not expect him to do so, and also stated that he had not taken a single note of the evidence on the trial, but that his associates had taken full notes and he wished to confer with them and have the benefits of their notes, etc., in filing his exceptions. That owing to the serious illness of the Colonel's wife and the dangerous illness of one of his children, he was confined in the sick room for a week or more, so that he could not make out any exceptions before the 25th or 26th of January, 1875, and his exceptions or case was handed to Mr. Watson on Monday or Tuesday, the 25th of January. That at the time of serving the case on appeal upon Col. Masten by defendant's counsel, they must have known that it would be impossible for Col. Masten to confer with his associate counsel and get their assistance, or the benefit of their notes in filing his exceptions, and have the case settled by Judge Wilson, before his case, Cloud v. Wilson, was heard, and in all probability decided. And that this could not be done even if the Colonel took the responsibility of filing the exceptions without the aid of his associates or their notes. That plaintiff's counsel resided, Mr. J. M. Clement in Mocksville, J.M. McCorkle in Salisbury, Wilson, ______ and ______ in Lexington, L.M. Scott in Greensboro, and J. Masten in Winston. That defendants' counsel, or some of them, knew that Col. Masten was one of Judge Wilson's counsel and that the Judge, with the Colonel, intended to leave Winston on the 18th of January, 1875, for the Supreme Court at Raleigh and be present at the hearing of the case, Cloud v. Wilson. And at the time Mr. Watson presented the case of appeal with the exceptions to Judge Wilson, the Judge either knew or had good reason to believe the decision of the Supreme Court was against him, and that these papers were not presented to the Judge until after he returned from Raleigh and his case had been heard.
VIII. That plaintiff is informed that so far as his counsel are (114) concerned, that there was no agreement as to how, when, or where the case of appeal was to be made out by defendants, or settled. That in fact, no agreement was necessary, for the reason, as he is informed, that the law prescribes how the whole matter shall be done. *Page 97 
IX. That plaintiff is informed and believes that in the latter part of May, or the first part of June, 1875, being the Spring Term of Stokes Superior Court, some of defendant's counsel did ask one of plaintiff's counsel if he would agree that Judge Wilson should make out the case, who, in reply, proposed that the counsel should take the case and exceptions and make out the case, saying that all he should ask or insist upon, was a fair statement of the case, and that if they were willing to that, the case could be settled at once. The reply was, "But if we cannot agree, what will you do?" The answer was, "I will not answer now, but if you will try I believe we can agree, all I ask is a fair case," and declined to make any offer. Thus the matter ended.
X. "That plaintiff insist, that if the defendants really intended to appeal and failed to get it up, such failure was owing solely to their own neglect, and on no account owing the default of plaintiff or his counsel, or of Judge Wilson. That defendants had ample time and opportunity to get their appeal up, but neglected to do so. So that plaintiff insists that defendants are not entitled to the relief prayed for, nor to any relief whatever in the premises; and prays to be hence dismissed without day, and with his reasonable cost."
The affidavit of Joseph Masten, Esq., of counsel for the plaintiff, was also filed, but the same is not set out, as the material parts thereof are stated in the opinion of the Court.
As we said in Wade v. City of Newbern, 72 N.C. (115) 498, it is of prime importance that the rules prescribed in C. C.P. for preparing and sending up cases to this Court should be strictly complied with. And wherever there has been a departure from them, and objection taken, we will sustain the objection, and dismiss the appeal. Nor can we hear testimony in excuse for the departure. The profession will recognize the propriety of this rule, when it is remembered how often counsel on opposing sides, make conflicting statements. In such cases we cannot undertake to decide between them. Equal forces operating in different directions leave the thing at rest.
But still there must be innumerable cases where the courtesies of the profession will allow of departures. And where that appears of record, or is not denied, when we will support them. *Page 98 
Circumstances which we could not consider upon a motion to dismiss the appeal, might nevertheless be considered on a motion for a certiorari.
In the case before us, the appellant did not serve "the case" upon the appellee within the prescribed time. And afterwards when he did serve it, it would have been competent for the appellee to take no notice of it, or to reject it. And if he had done so we would dismiss it. But then it was competent for the appellee to waive the lapse of time; and in that case we would entertain the appeal. The record shows no such waiver. And, as upon the motion to dismiss the appeal, we can hear no contradictory evidence, the motion must be allowed, if the waiver is denied and the counsel left to settle courtesies out of Court.
The appellant files an affidavit that there was such waiver. The appellee and his counsel file counter-affidavits. We can consider only the counter-affidavits: and unless it appears from them that the lapse of time was waived, the appeal must be dismissed.
(116) Mr. Masten, the appellee's counsel, states that the appellant's counsel served "the case" on him; "upon examining the case, I remarked, I cannot agree to this." * * * "I then stated that they knew that I was one of Judge Wilson's counsel, and intended to leave with him on the 18th for Raleigh," etc. "That I could not file my exceptions before I returned." "And that I wanted the aid of my associate counsel and their notes; that there were 100 witnesses examined, and I had taken no notes; but my associates had; and that the time was too short for me to do it. And finally I did not say whether I would make out any exceptions or not. My final remark was, well, I will see about it." * * * "On 25th or 26th, and it may have been as late as 27th or 28th January, 1875, I made out our exceptions, or case, and handed the paper to Mr. Watson," the appellant's attorney, "stating that my family had been so sick that I could not do any thing before. That I would like to re-write a part of it, as I had no time to even correct it."
It is true that Mr. Masten stated to the appellant upon other occasions that he was not authorized to waive any thing, and that "no quarters was his motto;" but still it is clear that in this particular, he did by his conduct, waive the lapse of time. And having done so, we will hold him to it.
Now, here was not only no objection to the lapse of time, but he actually accepted the paper, and as soon as he could, filed exceptions to it. Where then is the difficulty? It happens in this way: The parties not being able to agree upon a statement of the case, it became necessary for the judge to settle it. And before he could do so, he was ousted of his office. *Page 99 
So, the appeal is lost. And a certiorari will do no good, because there is no judge who can settle the case. The only remedy is, to remand the case for a new trial. Isler v. Haddock, 72 N.C. 119.
The motion to dismiss the appeal, is not allowed. The motion (117) for certiorari is not allowed. The case is remanded and a new trial ordered. Each party will pay his own cost in this Court.
PER CURIAM. Judgment accordingly.
Cited: Rouse v. Quinn, 75 N.C. 355; Simonton v. Simonton, 80 N.C. 7;Walton v. Pearson, 82 N.C. 466; Hutchison v. Rumfelt, 83 N.C. 443;Scroggs v. Alexander, 88 N.C. 67; Royster v. Burwell, 90 N.C. 25; Officev. Bland, 91 N.C. 3; Comrs. v. Steamship Co., 98 N.C. 167; S. v. Price,110 N.C. 602; Glanton v. Jacobs, 117 N.C. 428.